IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRST BANK d/b/a FIRST BANK & TRUST, | § § § | |
| Plaintiff and Counter-Defendant, and | § § § | |
| DUTCH PLAZA PROPERTIES, LTD., | § § | |
| Intervenor Plaintiff and Counter-Defendant, | § § § | |
| v. | § § | CIVIL ACTION NO. H-05-4337 |
| NABEEL R. ARAFAT a/k/a BILL ARAFAT, A-1 COLONEL VIDEO & AUDIO, INC., COLONEL VIDEO & CAR STEREO, INC., | § § § § § | |
| Defendants, and | § § | |
| ROBERT YANOURI and A.M.R. IMPORTS, INC., | § § § | |
| Defendants and Counterplaintiffs, | § § | |

MEMORANDUM AND ORDER

Pending is Defendants Robert Yanouri and A.M.R. Imports, Inc.'s Motion to Dismiss and/or to Abstain (Document No. 7). After having carefully reviewed the motion, response, reply, surreply, and applicable law, the Court concludes that the motion should be denied.

I.  Background

Nabeel Arafat is the debtor in bankruptcy ("Debtor").  Dutch Plaza Properties, Ltd. ("Dutch Plaza") was the landlord of Debtor's business, Colonel Video & Car Stereo, Inc. ("Colonel Video"), under two leases executed by Debtor and Dutch Plaza in 2000 and January, 2002.  First Bank, d/b/a First Bank & Trust ("First Trust") lent funds to Colonel Video, guaranteed by Arafat, and claimed a first priority lien on the contents of the space Colonel Video leased from Dutch Plaza.

In April, 2002, Debtor entered into a business relationship with Robert Yanouri and his business, A.M.R. Imports, Inc. (collectively, "A.M.R."), which First Bank and Dutch Plaza contend was a partnership or joint venture through which Debtor and A.M.R. sold furniture and jewelry out of Debtor's store and shared profits, expenses, and costs of labor equally.  *See* 04-AP-3595, Document No. 33 ¶¶ 18-20.  A.M.R., on the other hand, alleges that it merely had a sublease arrangement with Debtor, and, by June, 2002, A.M.R. had severed its business relationship with Debtor, paid rent directly to Dutch Plaza, and became a tenant at will.  *See* 04-AP-3595, Document No. 21 ¶¶ 8-9.  In December, 2002, after Debtor and Colonel Video fell into default on their rent payments to Dutch Plaza and their loan obligation to First Bank, Dutch Plaza

locked out Debtor and his company from the premises, and First Bank removed all inventory from the premises. A.M.R. alleges that in taking these actions Dutch Plaza wrongfully locked out and evicted A.M.R. from the premises, and First Bank wrongfully asserted a lien upon and converted A.M.R.'s inventory. In 2003, A.M.R. filed suit in Texas state court, alleging conversion, violations of the Deceptive Trade Practices Act ("DTPA"), and conspiracy against several defendants, including First Bank, Dutch Plaza, and Debtor. *See* Document No. 7 ex. 1-B.[1]

In 2004, Debtor filed for Chapter 7 bankruptcy. Id. ¶ 5.[2] First Bank instituted the instant adversary proceeding, asserting that Debtor's debt to First Bank is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) because it was obtained under false pretenses--namely, "to induce First Bank to release the inventory merely so Debtor could sell the inventory for his personal gain and to deprive First Bank of its rights in the collateral." *See* 04-AP-3595, Document No. 33 ¶ 41. First Bank alleges that A.M.R. and/or Yanouri were partners or joint venturers of Debtor, and First Bank

---

[1] The State court judge has decided not to proceed with the state court action until all federal court matters have been resolved. *See* id. ¶¶ 4, 13.

[2] In November, 2005, the Bankruptcy Court entered a general discharge of the Debtor. However, the non-dischargeability claims, including those asserted by First Bank and Dutch Plaza, are not included in the discharge. *See* 04-BK-33733, Document No. 82.

seeks declarations that, among other things, it properly exercised its rights to the collateral and did not convert any inventory located in the leased premises.  *See* 04-AP-3595, Document No. 33. First Bank also seeks contribution from Debtor if it is found liable for A.M.R.'s claims.  Dutch Plaza intervened in this adversary, asserting that Debtor's debt to Dutch Plaza is non-dischargeable under 11 U.S.C. § 523(a)(6) because Debtor "intentionally, willfully, and maliciously caused extensive injury to property owned by Dutch Plaza."  *See* 04-AP-3595, Document No. 34 ¶ 64.  Dutch Plaza seeks declaratory relief and recovery against Debtor and A.M.R. based on claims of breach of lease and property destruction.  A.M.R. counterclaimed against First Bank and Dutch Plaza, alleging conversion, breach of tenancy at will, conspiracy, and violations of the DTPA.  *See* 04-AP-3595, Document No. 53. A.M.R. timely filed a jury demand, all parties did not consent to try the case in Bankruptcy Court, and this Court thereafter adopted the Bankruptcy Judge's Recommendation to Withdraw the Reference from the bankruptcy court.  *See* Document Nos. 1 & 18.[3]  A.M.R. now

---

[3] A.M.R. contends that "it is not clear" whether the Bankruptcy Court recommended that the reference be withdrawn as to the entire case, or just "the state law issues pending among A.M.R., First Bank and Dutch Plaza." Document No. 7 ¶ 23.  However, the recommendation explicitly stated that "in view of the jury demand and the absence of consent to try the <u>case</u> to the bankruptcy court, this <u>case</u> must be tried before the district court."  *See* Document No. 1 at 2 (emphasis added).  This Court adopted the Bankruptcy

moves to dismiss the case for lack of jurisdiction, or, alternatively, to abstain.[4]

## II. Discussion

### A. Motion to Dismiss for Lack of Jurisdiction

Under 28 U.S.C. § 1334, a district court's bankruptcy jurisdiction extends to four types of bankruptcy matters: "(1) 'cases under title 11,' (2) 'proceedings arising under title 11,' (3) proceedings 'arising in' a case under title 11, and (4) proceedings 'related to' a case under title 11." In re Brass, 301 F.3d 296, 303 (5th Cir. 2002) (interpreting 28 U.S.C. § 1334(a)-(b)). To determine if jurisdiction exists, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." In re Bass, 171 F.3d 1016, 1022 (5th Cir. 1999) (quoting In re Walker, 51 F.3d 562, 569 (5th Cir. 1995)). An action generally is "related to" a bankruptcy if the anticipated outcome "could conceivably have any effect on the estate being administered in bankruptcy." Id. More specifically, for

---

Court's recommendation and withdrew the case from the Bankruptcy Court.  *See* Document No. 18.

[4] This is A.M.R.'s second motion to dismiss for lack of subject matter jurisdiction or to abstain.  The first motion was denied without comment by the Bankruptcy Court.  *See* 04-AP-3595, Document Nos. 52, 58, & 60.

jurisdiction to attach, the anticipated outcome must "(1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate."  Id.

First Bank and Dutch Plaza assert that jurisdiction exists because, *inter alia*, it is it is at least conceivable that the outcome of the adversary proceeding could alter the rights, obligations, and choices of action of Debtor and affect the administration of the estate.  For instance:

> [I]t is conceivable that (i) First Bank could be found liable on the claims/causes of action asserted by [A.M.R.], and (ii) the Court could determine that First Bank is entitled to contribution from the Debtor on such liability, and (iii) the contribution debt could be determined non-dischargeable under 11 U.S.C. § 523. Further, the Court could determine that [A.M.R. and/or Yanouri] and the Debtor were partners, introducing Debtor's partnership interest into the property of the estate, thereby effecting the administration of the estate.

*See* Document No. 22 ¶ 25.  A.M.R. replies that the administration of the bankruptcy estate will not be affected by the outcome of this case because a general discharge of the Debtor has been entered.  In support of its contention, A.M.R. cites two cases observing that when there is no pending bankruptcy case, or when a bankruptcy case has been dismissed, what were once "related" adversary proceedings would generally also be dismissed.  *See* In re Moseley, 161 B.R. 382, 384-85 (Bankr. E.D. Tex. 1993); Berry v. Am.

Sec. Life Ins. Co., No. Civ.A. 301CV470WS, 2002 WL 32397265 (S.D. Miss. Mar. 14, 2002). Moseley and Berry deal with different sets of circumstances than those in this case, however, for here, there *is* a pending bankruptcy case. Although the Debtor in this case received a discharge from the Bankruptcy Court, the Bankruptcy Court's order expressly states that the discharge "is not a dismissal of the case. . . ." Moreover, the same order specifies that debts like those claimed by First Bank and Dutch Plaza--which are the subject of the non-dischargeability claims--are not included in the discharge. *See* 04-BK-33733, Document No. 82 at 2 ("**Debts that are Not Discharged**. . . . Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged"). Thus, it is at least conceivable that the outcome of this adversary proceeding will affect Debtor and the property and administration of the bankruptcy estate. As such, the Court has subject matter jurisdiction over the matter, and A.M.R.'s motion to dismiss will be denied.

B.   Motion to Abstain

    1.   Mandatory Abstention

Under 28 U.S.C. § 1334(c)(2), a district court must abstain from hearing a proceeding if the following requirements are met:

(1) a motion has been timely filed requesting abstention; (2) the cause of action is essentially one that is premised on state law; (3) the proceeding is non-core or related to the bankruptcy case; (4) the proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case; and (5) the proceeding has already been commenced and can be timely adjudicated in a state court forum.  *See* Broyles v. U.S. Gypsum Co., 266 B.R. 778, 782-83 (E.D. Tex. 2001); In re Gober, 100 F.3d 1195, 1206 (5th Cir. 1996) (citing 28 U.S.C. § 1334(c)(2)).  If an action is a core proceeding under 28 U.S.C. § 157(b), mandatory abstention does not apply.  *See* Regal Row Fina, Inc. v. Wash. Mutual Bank, FA, No.Civ.A. 3:04-CV-1033, 2004 WL 2826817, at *8 (N.D. Tex. Dec. 9, 2004) (Fish, Chief J.).  First Bank and Dutch Plaza argue that mandatory abstention is inappropriate because (1) the case involves core non-dischargeability claims against Debtor; and (2) the motion was not timely filed.

First Bank and Dutch Plaza's non-dischargeability claims against Debtor constitute a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(I) ("[C]ore proceedings include . . . determinations as to the dischargeability of particular debts").  A.M.R. argues, however, that the non-dischargeability claims should not serve as a basis for retaining or exercising bankruptcy jurisdiction because (1) "[Debtor] has not entered an appearance in this action," and

8

should, therefore, be subject to a default judgment; and (2) "no party is prosecuting or defending the non-dischargeability claim." *See* Document No. 19 ¶ 2.  Although Debtor did not appear at a Rule 16 conference conducted by this Court, he did enter appearances in this case when he filed Answers to First Bank's and Dutch Plaza's complaints.  *Cf*. New York Life Ins. Co. v. Brown, 84 F.3d 137, 141-42 (5th Cir. 1996) (a party appears in a case when he takes an action, formal or informal, which is "responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim."); Baez v. S.S. Kresge Co., 518 F.2d 349, 350 (5th Cir. 1975).  Having answered the complaints against him, Debtor is not subject to a default judgment.  Furthermore, both First Bank and Dutch Plaza assert non-dischargeability claims against Debtor in their complaints, *see* 04-AP-3595, Document Nos. 33 & 34, and neither party has abandoned the claims.  Thus, the core non-dischargeability claims against Debtor remain.

Moreover, while 28 U.S.C. § 1334(c)(2) does not define what constitutes a "timely" motion, courts have found that "a party acts in a timely fashion when he or she moves as soon as possible after he or she should have learned the grounds for such a motion."  *See* In re Midgard Corp., 204 B.R. 764, 776 (10th Cir. 1997) (quoting In re Novak, 116 B.R. 626, 628 (N.D. Ill. 1990)).  *See also* J.T.

Thorpe Co. v. Am. Motorists, No. Civ.A. H-02-4598, 2003 WL 23323005, *3 (S.D. Tex. June 9, 2003) (same) (motion to abstain was timely when filed within thirty days of removal to federal court). "A motion for abstention should be made early in the case, so as to prevent the waste of judicial resources." In re Marshland Dev., Inc., 129 B.R. 626, 632 n.15 (Bankr. N.D. Cal. 1991) (finding motion untimely when made eight months after commencement of adversary proceedings). Here, A.M.R. did not move for mandatory abstention until nearly eight months after the adversary proceeding began--after it had deposed two witnesses and moved for summary judgment, and only after its motion for summary judgment was denied. See 04-AP-3595, Document No. 52. After the previous motion was denied and nearly sixteen months after the commencement of the suit, A.M.R. filed this its second motion to abstain, which--given the lengthy delay and procedural history of the case--cannot be deemed to have been filed "as soon as possible" after A.M.R. learned the grounds thereof. Abstention is mandated by § 1334(c)(2) only upon the filing of a timely motion.

2.  Discretionary Abstention and Equitable Remand

The court in its discretion may abstain from hearing a matter "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).

Fourteen factors have emerged for consideration in determining whether to exercise discretionary abstention and, in an appropriate case, equitable remand:

1. the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

2. extent to which state law issues predominate over bankruptcy issues;

3. difficult or unsettled nature of applicable law;

4. presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

5. jurisdictional basis, if any, other than § 1334;

6. degree of relatedness or remoteness of proceeding to main bankruptcy case;

7. the substance rather than the form of an asserted core proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9. the burden of the bankruptcy court's docket;

10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11. the existence of a right to a jury trial;

12. the presence in the proceeding of nondebtor parties;

13. comity; and

Case 4:05-cv-04337   Document 43-1   Filed in TXSD on 09/11/06   Page 12 of 14

    14.    the possibility of prejudice to other parties in the action.

*See* Broyles v. U.S. Gypsum Co., 266 B.R. 778, 785 (E.D. Tex. 2001).

Here, and at this stage of the litigation, the Court finds that on balance the factors weigh against abstention. A principal factor is the fact that the non-dischargeability claims are inextricably intertwined with the state law claims asserted by and against A.M.R. For instance, Dutch Plaza's claims against A.M.R. for property destruction are interrelated with its non-dischargeability claim against Debtor, as both claims are premised on "the same massive property destruction to Dutch Plaza's premises by the alleged partnership of A.M.R./Yanouri and Debtor." *See* Document No. 22 ¶ 30.[5] Furthermore, First Bank asserts that evidence of a partnership between A.M.R. and Debtor is significant to determining whether Debtor's debt to First Bank is dischargeable because: "(1) it evidences that the loan First Bank granted to Debtor was based on false pretenses, a false representation, or actual fraud; (2) the existence of a partnership will affect the assets available to the estate; and (3) the issues will require

---

[5] As First Bank and Dutch Plaza point out, the evidence of a partnership between A.M.R. and Debtor was "strong enough to survive a summary judgment motion propounded by [A.M.R.] [on the partnership issue] in the Bankruptcy Court." *See* Document No. 22 ¶ 28.

12

identical testimony and evidence presented as in the state case." Id.  Moreover, First Bank seeks contribution from Debtor if it is found liable for the state law claims asserted by A.M.R., and this contribution debt could be determined non-dischargeable under 11 U.S.C. § 523, thereby affecting the efficient administration of the bankruptcy estate.  Thus, judicial economy weighs heavily against abstention.

A.M.R.'s desire for a jury trial on its claims and defenses can be met in this Court as well as state court.  Moreover, A.M.R.'s charges that First Bank and Dutch Plaza engaged in forum shopping to avoid the jurisdiction of a competent state court, which the Court does not wholly discount, are nonetheless not highly persuasive given the fact that First Bank commenced this adversary proceeding to challenge the dischargeability of the debt guaranteed by Debtor, and only later did it amend its complaint to assert additional claims arising out of essentially the same set of operative facts as the non-dischargeability claim.  In sum, after careful consideration and a balancing of the foregoing and others of the relevant factors, the Court finds that abstention is not warranted in this case.[6]

---

[6] A.M.R. also requests abstention under the Wilton/Brillhart doctrine because the claims asserted against A.M.R. are declaratory and in the nature of declarations of non-liability.  See Wilton v. Seven Falls Co., 115 S. Ct. 2137 (1995); Brillhart v. Excess Ins.

13

III.  Order

Based on the foregoing, it is

ORDERED that Defendants Robert Yanouri and A.M.R. Imports, Inc.'s Motion to Dismiss and/or to Abstain (Document No. 7) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this  11th  day of September, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

Co. of Am., 62 S. Ct. 1173 (1942).  However, A.M.R. has identified no cases where this doctrine has been applied in a bankruptcy adversary proceeding or under similar facts, and, even if the doctrine were to apply, A.M.R. has failed to show that the relevant factors weigh in favor of abstention.  Cf. Sherwin-Williams Co. v. Holmes County, 343 F.3d 383, 387 (5th Cir. 2003).

14